# IN THE SUPREME COURT OF THE STATE OF NEVADA

MARK PICOZZI,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 71165

FILED

JUN 08 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY S. Young
DEPUTY CLERK

## ORDER OF AFFIRMANCE

This is an appeal from a judgment of conviction, pursuant to a jury verdict, of two counts of impersonation of an officer, two counts of oppression under color of office, four counts of sexual assault, robbery, battery with intent to commit sexual assault, and three counts of open or gross lewdness. Eighth Judicial District Court, Clark County; Eric Johnson, Judge.

In 2014, appellant Mark Picozzi arranged separate meetings with two escorts in Las Vegas. During both encounters, Picozzi impersonated a police officer in order to rob one of the escorts and coerce sexual contact with both. At trial, the State produced evidence of Picozzi's prior bad acts, for which he was not convicted, by calling two witnesses—an escort and a massage therapist. Both witnesses testified that Picozzi had solicited their services and then impersonated a police officer in order to rob them and attempt to coerce them into having sex.

On appeal, Picozzi argues that the district court abused its discretion when it (1) granted the State's motion in limine seeking to admit prior bad act evidence; (2) denied his request for a continuance; (3) refused to discharge an inconvenienced juror; (4) admitted evidence of condoms, latex gloves, duct tape, and scissors found in his vehicle along with

18-21814

testimony of unverified Google searches; and (5) denied his motion to dismiss based on the State's failure to process his car for forensic evidence.

*The district court did not abuse its discretion in granting the State's motion in limine*

Picozzi argues that the district court erred by granting the State's motion in limine seeking to introduce evidence of prior bad acts because the prior bad acts were too remote in time to be relevant and Picozzi had no "overarching plan" that the evidence would help prove. Picozzi further argues that the two witnesses who were eventually allowed to testify were unnecessary and more prejudicial than probative because they testified to essentially the same conduct as the victims in the instant case. The State argues that the evidence was admissible to show Picozzi's common scheme of impersonating a police officer to rob his victims and coerce them into having sex. The State also contends that the evidence was relevant to refute Picozzi's defense theory that he was being extorted by the escorts.

"The trial court's determination to admit or exclude evidence of prior bad acts is a decision within its discretionary authority and is to be given great deference. It will not be reversed absent manifest error." *Braunstein v. State*, 118 Nev. 68, 72, 40 P.3d 413, 416 (2002). NRS 48.045(2) provides as follows:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that the person acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

We conclude that the district court did not abuse its discretion in finding that the prior bad act evidence falls within NRS 48.045(2) because it showed

Picozzi's intent and plan. Prior accounts of Picozzi impersonating a police officer in order to commit robbery and obtain sex, specifically involving escorts, helped establish Picozzi's unique scheme of criminal conduct. Further, we conclude that the testimony was not duplicative because the prior bad acts occurred on the East Coast. This would weaken Picozzi's extortion defense because he would have to have shown that multiple escorts separated by thousands of miles and several years were all in on the conspiracy to extort him.

Additionally, we conclude that the prior bad acts were not too remote in time to be inadmissible. Although the evidence was seven years old at the time of trial, it clearly demonstrated a common scheme relevant to the crimes charged. *See Braunstein*, 118 Nev. at 73, 40 P.3d at 417 (stating that "prior acts that are remote in time *and* involve conduct different from the charged conduct" are generally inadmissible (emphasis added)). Given the deference granted to trial courts in deciding whether to admit prior bad act evidence, we hold that the district court acted within its discretion in granting the State's motion.

*The district court did not abuse its discretion in denying Picozzi's request for a continuance*

Picozzi contends that the district court erred in denying his request for a continuance after granting the State's motion to admit prior bad act evidence. When the district court granted the State's motion, it stated that if Picozzi intended to present a passive defense by waiting for the State to meet its burden of proof, then "the [c]ourt would consider prohibiting the State from introducing the prior act evidence until after the presentation of its other evidence and ruling then as to its propensity to show intent, common scheme, and knowledge." However, the district court also determined that "a separate basis allows admission of the prior act

evidence"—that the prior bad acts could be used to show intent and rebut the extortion claims Picozzi had already made and could be admissible as nonhearsay admissions by a party opponent, regardless of Picozzi's intent to present a passive defense. Picozzi moved for clarification, and the district court reiterated that it did not see how Picozzi could present a passive defense given that the prior bad acts could be admissible on an independent basis. Picozzi suggested, without specifically requesting, that he may need a continuance of the trial, which the district court declined to grant.

Picozzi argues that he was prejudiced because he was prepared to present a passive defense, but by the time it was clear that the State would not be precluded from calling the prior bad act witnesses, he did not have enough time to procure his own out-of-state witnesses to refute them. The State argues that the district court did not err when it denied the continuance because it had alerted Picozzi from the beginning that the witnesses would likely be permitted to testify.

We hold that the district court did not abuse its discretion when it denied Picozzi's request for a continuance. "This court has held denials of motions for reasonable continuances to be an abuse of discretion where the purpose of the motion is to procure important witnesses and the delay is not the particular fault of counsel or the parties." *Lord v. State*, 107 Nev. 28, 42, 806 P.2d 548, 557 (1991). Here, the delay was Picozzi's fault because the district court was clear from the start that the prior bad act witnesses would likely be allowed to testify. The district court never definitively ruled that the prior bad act witnesses would be precluded if Picozzi presented a passive defense; the court stated that it "would consider" it, and immediately thereafter stated that there were independent bases for admission of the evidence. The district court also did nothing to hinder

Picozzi from preparing his out-of-state witnesses. Thus, we conclude that Picozzi's interpretation of the district court's ruling was unreasonable, and that the district court did not abuse its discretion when it denied his request for a continuance.

*The district court did not abuse its discretion when it refused to excuse a juror*

At the beginning of the second day of trial, juror number eight requested that he be dismissed from jury service due to hardship. The district court refused to dismiss the juror, and Picozzi commented on the court's ruling, stating that it raised concerns. On appeal, Picozzi argues that the district court abused its discretion when it refused to discharge juror number eight. Picozzi points out that there were two alternate jurors ready to fill juror number eight's seat, and that under *McKenna v. State*, "[a] juror who will not weigh and consider all the facts and circumstances shown by the evidence for the purpose of doing equal and exact justice between the State and the accused should not be allowed to decide the case." 96 Nev. 811, 813, 618 P.2d 348, 349 (1980). The State contends that the district court acted within its discretion when it refused to discharge the juror, and that *McKenna* is inapplicable since the juror did not indicate that he could not weigh and consider the facts and circumstances of the case.

NRS 16.080 states that "the court may discharge a juror upon a showing of the juror's sickness, a serious illness or death of a member of the juror's immediate family, an undue hardship, an extreme inconvenience, any other inability to perform the juror's duty or a public necessity." Although the statute includes "undue hardship" and "extreme inconvenience" among the permissible reasons for discharge, it provides that the court *may* discharge the affected juror. *McKenna* only mandates a discharge where the affected juror is unable to fairly exercise his or her

duties. 96 Nev. at 813, 618 P.2d at 349. While juror number eight expressed that it would be difficult to get his daughter picked up from school and paid time-off from work, nothing in his discourse with the court indicated that he would not be able to fairly decide the case. Thus, we conclude that the district court acted within its discretion in refusing to discharge the juror.

*The district court did not abuse its discretion in admitting evidence*

Picozzi argues that the district court abused its discretion in denying his motion in limine seeking to preclude the admission of two pieces of evidence: (1) the bag from his vehicle containing condoms, latex gloves, duct tape, and scissors; and (2) testimony regarding Google searches of escorts' phone numbers. "We review a district court's decision to admit or exclude evidence for an abuse of discretion." *Ramet v. State*, 125 Nev. 195, 198, 209 P.3d 268, 269 (2009).

*The bag containing condoms, latex gloves, duct tape, and scissors*

Picozzi argues that the district court abused its discretion when it denied his motion in limine to exclude evidence of the bag containing condoms, latex gloves, duct tape, and scissors because those items were not relevant to any of the crimes charged and were highly prejudicial. Picozzi points to the district court's rationale for excluding the knife that was also found in the bag, and argues that the same reasoning should have applied equally to the other items as well. The State argues that the evidence was relevant because the condoms were the same brand as those Picozzi used when he assaulted B.W., the victim in this case, and that prior bad act witness N.T. testified that Picozzi wore latex gloves, making him appear like a police officer. The State further contends that the evidence was probative because Picozzi posed as a police officer to force his victims to submit to his sexual advances, and the State was permitted to argue that Picozzi kept those items to use if his victims did not submit.

"'[R]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. Irrelevant evidence is not admissible, NRS 48.025(2), and "relevant . . . evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035(1). According to the district court minutes,[1] the district court made the following ruling:

> The Defendant is not alleged at any time to have threatened the victims with physical harm or a weapon. While the knife could have been intended to threaten the victims, it could also have been intended for other purposes. This speculation as to Defendant's intent as to use of the knife minimizes its relevance in this case. The Court agrees with Defendant that admission of the knife would be highly prejudicial to the [D]efendant.

The condoms, being of the same brand as those specified in B.W.'s testimony, were relevant as they connected Picozzi to the crime. Similarly, because N.T. testified that Picozzi wore latex gloves when he searched her residence, the latex gloves were relevant as they bolstered the credibility of N.T.'s testimony. However, the duct tape and scissors have no connection to any of the charged crimes or prior bad act evidence, and the State's only explanation for their inclusion is that they were relevant to the issue of consent because Picozzi could have used them to restrain his victims had they not submitted to his asserted authority as a law enforcement officer. We conclude that these items were not relevant and were also

---

[1]The parties only included the minute order in the record on appeal and failed to include the transcript of the district court's hearing.

prejudicial as they suggest that Picozzi was willing to use physical force or restraint beyond what the testimony showed to assault his victims, which is qualitatively different than the nonviolent coercion used by Picozzi.

Although the duct tape and scissors should not have been admitted into evidence, we conclude that the error was harmless and that reversal is not warranted. "Where the independent evidence of guilt is overwhelming, the improperly admitted evidence is harmless error and the resulting conviction will not be reversed." *Turner v. State*, 98 Nev. 243, 246, 645 P.2d 971, 972 (1982). Notwithstanding the improper admission of the duct tape and scissors, there was other evidence that overwhelmingly supported a finding of Picozzi's guilt. That evidence included the testimony of the two victims, the additional common scheme testimony from the two prior bad act witnesses, Picozzi's cell phone records listing calls made to the escort agency, and surveillance footage of Picozzi at one of the victims' hotel.

*The Google searches*

At trial, the State's investigator testified that she performed Google searches of telephone numbers retrieved from Picozzi's cell phone and from handwritten notes found in his car, and that the search results returned advertisements for escorts associated with those numbers. Picozzi argues that allowing the Google search testimony violated NRS 52.015, which requires evidence to be authenticated. The State argues that the evidence was not unduly prejudicial because it related to the notes found in Picozzi's vehicle and were only admitted to demonstrate how Picozzi could have researched escorts' information.

NRS 52.015(1) states that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence or other showing sufficient to support a finding that the matter in question is what its proponent claims." During the State's direct

examination of its investigator, the district court called a sidebar conference where the State explained that the evidence was not meant to prove definitively that those phone numbers belonged to escorts, but rather to show the process by which Picozzi could have used Google as a search tool to obtain the phone numbers on the handwritten notes found in his car. Additionally, the evidence was used to explain information written with the numbers, but not immediately apparent from the numbers themselves. We conclude that the district court did not abuse its discretion in admitting the testimony regarding Google searches of the phone numbers found on Picozzi's cell phone and on the handwritten notes. The evidence was relevant because it explained how someone can find escorts using the internet, and it connected the information found on Picozzi's phone and in his handwritten notes with escort advertisements. We further conclude that because the evidence was not being used to conclusively identify the owners of those phone numbers, it did not need to be authenticated pursuant to NRS 52.015(1).

*The State's failure to preserve Picozzi's vehicle for DNA testing is not grounds for dismissal*

Picozzi argues that the district court erred when it denied his motion to dismiss based on the State's failure to process his vehicle for forensic evidence. Picozzi contends that had the State collected forensic evidence from his vehicle, he could have proven that B.W. was in his car, which would have contradicted her trial testimony. Picozzi claims that he was prejudiced by the State's failure to collect evidence and that reversal of his conviction is necessary.

The district court denied Picozzi's motion without referencing caselaw or conducting an analysis. It merely stated that the failure to test for DNA evidence was grounds for cross-examination but did not justify

dismissal. The State agrees with the district court's decision and argues that the police were not required to forensically process the car because none of the crimes were alleged to have occurred in Picozzi's vehicle. The State further contends that Picozzi was free to have his vehicle tested for DNA, but it was not the State's burden to do so.

"We review a district court's decision to grant or deny a motion to dismiss an indictment for abuse of discretion." *Hill v. State*, 124 Nev. 546, 550, 188 P.3d 51, 54 (2008). In *Daniels v. State*, this court adopted a two-part test to analyze a defendant's motion to dismiss based on the State's failure to gather evidence. 114 Nev. 261, 267-68, 956 P.2d 111, 115 (1998). "The first part requires the defense to show that the evidence was 'material,' meaning that there is a reasonable probability that, had the evidence been available to the defense, the result of the proceedings would have been different." *Id.* at 267, 956 P.2d at 115. If it is determined that the evidence was material, the district court must then decide "whether the failure to gather evidence was the result of mere negligence, gross negligence, or a bad faith attempt to prejudice the defendant's case." *Id.*

We conclude that Picozzi has failed to prove the first prong of the *Daniels* test. In Picozzi's voluntary statement to the police at the time he was apprehended, he did say that B.W. had been in his car. However, we conclude that any evidence of B.W. being in Picozzi's car would not have been "material" because there is not "a reasonable probability that, had the evidence been available to the defense, the result of the proceedings would have been different." *Id.* Whether or not B.W. was in Picozzi's car had little to do with the charged crimes stemming from his conduct inside his hotel room. Had Picozzi been able to produce evidence that B.W. was in his vehicle at some point, that evidence could have gone toward witness



impeachment on a collateral fact and would not substantially affect B.W.'s testimony on the actual crimes charged. Thus, the district court did not abuse its discretion in denying Picozzi's motion to dismiss. *See Wyatt v. State*, 86 Nev. 294, 298, 468 P.2d 338, 341 (1970) (holding that a correct result will not be reversed simply because it was based on the wrong reason).

Accordingly, for the reasons set forth above, we

ORDER the judgment of conviction AFFIRMED.

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Stiglich

cc:    Hon. Eric Johnson, District Judge
      Law Office of Michael H. Schwarz
      Attorney General/Carson City
      Clark County District Attorney
      Eighth District Court Clerk